No. 2472

Second Circuit

BREWSTER & ROACH v. JOE HAMILTON

(December 1, 1925, Opinion and Decree.)
(See pp. 105 and 178 herein.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Evidence—Par. 53, 337, 344.**

The testimony in this case is not sufficient, in the face of defendant's sworn testimony to the contrary, to prove that defendant gave the laborers on his plantation carte blanche to get whatever they chose from plaintiffs on defendant's account while he was at the same time supplying himself.

Appeal from Third Judicial District Court of Louisiana, Parish of Union, Hon. S. D. Pearce, Judge.

This is a suit to collect the price of goods furnished to defendant and his laborers. There was judgment for plaintiff for the amount furnished defendant which defendant admitted but judgment against plaintiff for the value of goods purchased by defendant's laborers. Plaintiff appealed.

Judgment affirmed.

Elder, Thompson & Digby, of Ruston, attorneys for plaintiffs, appellants.

H. E. Dawkins, of Ruston, attorney for defendant, appellee.

CARVER, J. Plaintiffs sue defendant for $208.80; $149.04 alleged to be for goods sold and delivered to him and $59.76 as the amount of an account defendant owed one. McFarland which, plaintiffs claim to have purchased from McFarland with defendant's consent and approval.

Annexed to the petition and made part

thereof are three itemized accounts, namely:

Joe Hamilton, by Richard Henderson, running from March 3, 1923, to December 10, 1923, $59.76.

Joe Hamilton, by Will Gun, running from February 2, 1923, to August 11, 1923, $74.76.

Joe Hamilton, by John D. Lewis, running from May 18, 1923, to June 4, 1924, $74.28.

Of this last account, $16.25 was in 1924, and the rest in 1923.

As to the account claimed to have been bought from McFarland, no effort was made to prove any such purchase but Roach, one of the plaintiffs, testified that defendant told him to charge him, defendant, an account made by Richard Henderson that had been charged to McFarland by the plaintiffs. He testifies that McFarland was present when Hamilton told him that. Defendant denied this, and said:

"Q. This Richard Henderson, I will ask you if you didn't in the presence of Mr. McFarland and Arthur Williams, tell Mr. Roach to charge this $44.75 to your personal account?

"A. No, sir; I got the same account, $83.05, or something like that. I might have told Mr. McFarland I would try to pay it. I don't know whether these two men were present or not."

McFarland testifies:

"Q. Mr. McFarland were you present at any time when there was a conversation between Mr. Joe Hamilton and Mr. Roach and yourself about the account of Richard Henderson?

"A. No, sir; I remember a conversation between Hamilton and I but I don't remember Williams and Roach being present.

"Q. What did Mr. Hamilton say?

"A. He said he would try to pay the negro's account.

"Q. The negro owed you?

"A. I wasn't responsible for the negro's account; I paid what I was responsible for."

Arthur Williams testified:

"Q. Were you present at any time when Mr. Joe Hamilton and Mr. Roach were discussing the account of the darkey Richard Henderson?

"A. Yes, sir; I remember one afternoon there was some discussion to this effect; he came in there and told him he had made a trade to work the negro and it seemed there was an account behind and he told him he would try to pay the account.

"Q. Told Roach he would try to pay the account?

"A. Yes, sir; he would try to pay it and make it all right."

As to this item, the proof, if admissible, seems to preponderate in favor of the defendant.

We think, however, that so far at least as that part of the Henderson account which was created before the conversation it is clear that parol proof was inadmissible.

As to the balance of the claim against defendant, Roach testified that defendant authorized him in January, 1923, to let his darkeys have stuff that year. He continues:

"Q. Do you remember what he said to you?

"A. No, not just the words.

"Q. Could you give the substance of what he said?

"A. He said anything the hands called for to let them have it and charge it to them.

"Q. You considered that a wide open gate, didn't you?

"A. Well, he told me to let them have it.

"Q. That was for what year you say, 1923?

"A. 1923.

"Q. Did he tell you the same thing in 1924?

"A. They didn't trade any in 1924.

"Q. Joe Hamilton's darkies traded only for 1923?

"A. Yes. sir; 1923."

We have seen above that some of the goods on the Lewis account were for 1924.

Defendant denies that he ever gave any authority to plaintiffs to sell his laborers anything on his account. He says that Lewis worked for wages for him in 1923, Will Gun made a crop on "halves", and that Richard Henderson did not work for him that year but for McFarland. He says, further, that he supplied his hands himself in 1923.

An inspection of the account sued on shows very few items of provisions which, in the case of advances to farm laborers, are usually the chief items of supplies.

Haile, a witness for the plaintiffs, and their collecter, testifies that he had a talk with defendant; that the first time he talked to him he said that he did not feel that he was responsible for the Henderson account but the last time he talked to him he said that when he sold cotton he would settle it but he did not know when he would sell cotton. He says, further, that he did not have an itemized statement of defendant's account but only a little statement in the day book and that he does not remember what Joe's account was.

The district judge decided in favor of the defendant, and we think correctly.

The testimony is not sufficient, in our opinion, to establish, in the face of defendant's sworn testimony to the contrary, that he gave the laborers on his plantation carte blanche to get whatever they chose from plaintiffs on his account while he was at the same time supplying them himself with what he thought they needed and the crops they were making justified.

For these reasons, the judgment of the lower court is affirmed.